UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
LUIS ALBERTO ESPINOZA SARMIENTO,          :
GEOVANI PEREZ, ALFREDO PEREZ,             :
JASMANY ADRIAN ORTIZ FERNANDEZ,           :
MILTON HERNANDEZ, WILSON                  :
HERNANDEZ, and CIRILO TORRES,             :
                                          :
                    Plaintiffs,           :
                                          :
                                          :
           -v.-                           :
                                          :
FLAGGE CONTRACTING INC., *et al.,*        :
                                          :
                    Defendants.           :
-----------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __2/27/2024___

**REPORT AND
RECOMMENDATION**

22-CV-9718 (VSB) (JLC)

**JAMES L. COTT, United States Magistrate Judge.**

**To The Honorable Vernon S. Broderick, United States District Judge:**

Luis Alberto Espinoza Sarmiento ("Sarmiento"), Geovani Perez ("G. Perez"),

Alfredo Perez ("A. Perez"), Jasmany Adrian Ortiz Fernandez ("Fernandez"), Milton

Hernandez ("M. Hernandez"), Wilson Hernandez ("W. Hernandez"), and Cirilo

Torres ("Torres") (together, "plaintiffs"), former employees of defendant Flagge

Contracting Inc. ("Flagge"), brought this action against Flagge and its owners,

defendants Francisco Rodriguez ("Rodriguez") and Miguel Rodriguez Monteiro

("Monteiro") (collectively, "defendants"), alleging violations of the Fair Labor

Standards Act ("FLSA") and New York Labor Law ("NYLL").

After the Court entered a default against the defendants, this case was referred to me for an inquest into damages. For the reasons set forth below, plaintiffs should be awarded damages in the amount of **$942,648.26.**

## I.    BACKGROUND

### A. Factual Background

The following facts, which are drawn from a review of the pleadings and submissions related to this inquest, are deemed established for the purposes of determining the defaulting defendants' liability and the damages to which plaintiffs are entitled. *See, e.g., City of New York v. Mickalis Pawn Shop, LLC,* 645 F.3d 114, 137 (2d. Cir. 2011) ("[A] defendant who defaults thereby admits all "'well-pleaded' factual allegations contained in the complaint." (internal citation omitted)); *Finkel v. Romanowicz,* 577 F.3d 79, 84 (2d Cir. 2009) ("In light of [defendant's] default, a court is required to accept all of [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor[.]" (citing *Au Bon Pain Corp. v Artect, Inc.,* 653 F. 2d 61, 65 (2d Cir. 1981))).[1]

---

[1] As Fernandez, M. Hernandez, W. Hernandez, and Torres joined the action after the complaint was filed, the Court relies on their affidavits submitted as part of plaintiffs' inquest papers, but otherwise relies on the allegations in the well-pleaded complaint and other inquest submissions for the other three plaintiffs (Sarmiento, G. Perez, and A. Perez). Given that the complaint was not verified, it would have been preferable for the original plaintiffs to have filed affidavits as well, as damages must be established through pertinent evidence, such as affidavits, to ensure there is a basis for the damages sought. *See, e.g., Transatl. Marine Claims Agency Inc. v. ACE Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (citations omitted). Nonetheless, courts have relied on both the relevant factual allegations found in the complaint and affidavits to support a damages request in an inquest. *See, e.g., Bemejo v. Shaker Contractors, Corp.*, No. 22-CV-1427 (JPC), 2022 WL 17251667, at *1–2 (S.D.N.Y. Nov. 28, 2022); *Galeana v. Lemongrass on Broadway Corp.*, 120 F.

Flagge is a domestic business corporation with its principal executive office located in Newark, New Jersey.  Complaint ("Compl.") ¶ 11, Dkt. No. 1.  Flagge provides construction work services at various locations in New York City.  *See id.* ¶ 7.  During the period relevant to plaintiffs' claims, defendants Rodriguez and Monteiro owned and operated Flagge.  *Id.* ¶ 12.

### 1.  Plaintiffs' Work and Compensation History

The plaintiffs' collective work and compensation history is alleged as follows:

### a.  Sarmiento's Work and Compensation

Sarmiento was employed by defendants from on or around June 2014 until on or around February 2020 to perform work "as a carpenter, mason, concrete, and rebar worker while performing related miscellaneous duties for the Defendants." Proposed Findings of Fact and Conclusions of Law ("PFOF") at 3, Dkt. No. 54. During the relevant statutory period, Sarmiento was paid a flat hourly rate of $25.00 per hour from November 2016 until December 2018, and $33.00 from January 2019 until February 2020.  *Id.* at 3–4.  For the duration of his employment, he worked six days per week and was regularly required to work approximately 66 hours or more each week.  *Id.*  Additionally, Sarmiento was paid on a bi-weekly basis during the relevant statutory period "without regard for the number of hours worked each day, or each week."  *Id.* at 4.

_____

Supp. 3d 306, 313 (S.D.N.Y. 2014) (citations omitted).  In its discretion, the Court relies on the complaint and other inquest submissions with respect to the other three plaintiffs.

### b.  G. Perez's Work and Compensation

G. Perez was employed by defendants from on or around March 2014 until on or around December 2018 "as a carpenter and mason while performing related miscellaneous duties for the Defendants." *Id.* at 4.  During the relevant statutory period, G. Perez worked six days per week and approximately 66 hours or more each week and was paid on a bi-weekly basis. *Id.* at 4–5.  G. Perez was paid a "flat hourly rate of $25 per hour without regard for the number of hours worked during the relevant statutory period." *Id.* at 4.

### c.  A. Perez's Work and Compensation

A. Perez was employed by defendants from on or around April 2014 until on or around December 2018 "as a carpenter and mason while performing miscellaneous duties for the Defendants." *Id.* at 5.  During the relevant statutory period, A. Perez worked approximately six days per week totaling approximately 70 hours or more each week and was paid on a bi-weekly basis. *Id.*  A. Perez was paid a "flat hourly rate of approximately $25 per hour without regard for the number or hours worked." *Id.*

### d.  Fernandez's Work and Compensation

Fernandez was employed by defendants from "approximately June 2015 through September 2022, as a construction worker while performing related duties and tasks at the instructions and orders of [defendants] Francisco [Rodriguez] and Miguel [Monteiro]." PFOF at 5–6; Affidavit of Jasmany Adrian Ortiz Fernandez dated August 9, 2023 ("Fernandez Aff.") ¶ 2, Dkt. No. 54-1. Although Monteiro was

the individual responsible for hiring and firing Fernandez, as well as setting his work hours and schedules, Fernandez worked under the supervision of both Rodriguez and Monteiro.  PFOF at 6; Fernandez Aff. ¶ 3.

Throughout Fernandez's employment he began each workday at 7:00 a.m. and regularly ended at 3:30 p.m. five days per week, from Monday through Friday. PFOF at 6; Fernandez Aff. ¶ 4.  Fernandez was often required to stay late four days per week, until 5:00 p.m.  PFOF at 6; Fernandez Aff. ¶ 5.  Additionally, during the relevant statutory period, Fernandez was required to work on Saturdays, twice per month, beginning at 9:00 a.m. and ending at 3:30 p.m.  PFOF at 6; Fernandez Aff. ¶ 6.  Overall, Fernandez worked approximately 48 to 55 hours per week.  PFOF at 6; Fernandez Aff. ¶ 7.

From approximately June 2015 until January 2020, Fernandez was paid exclusively in cash, and thereafter was paid by direct deposit.  PFOF at 6; Fernandez Aff. ¶ 8.  Fernandez was paid a "flat rate of approximately $32 per hour from 2015 through 2017; approximately $35 per hour from 2018 through 2020; and approximately $40 per hour from 2021 through 2022."  PFOF at 6; Fernandez Aff. ¶ 9.  Additionally, although Fernandez regularly received his pay on a weekly basis, there were times where defendants compensated Fernandez "less frequently . . . and never provided him with an accompanying pay stub or wage statement."  PFOF at 6–7; Fernandez Aff. ¶ 10.  Fernandez also received the same hourly rate of pay for all hours worked without regard for when he worked more than 40 hours per week. PFOF at 11.

### e. M. Hernandez's Work and Compensation

M. Hernandez was employed by defendants from on or around June 2016 until September 2022 "to perform work as a steel worker while performing related duties and tasks at the instructions of [Rodriguez and Monteiro]." *Id.* at 7; Affidavit of Milton Hernandez dated August 9, 2023 ("M. Hernandez Aff.") ¶ 2, Dkt. No. 54-2. Both Rodriguez and Monteiro were responsible for setting M. Hernandez's schedule and supervising his daily work. PFOF at 7; M. Hernandez Aff. ¶ 3. M. Hernandez regularly worked 42.5 hours or more each week, from 7:00 a.m. until 3:30 p.m. or later, Monday through Friday. PFOF at 7; M. Hernandez Aff. ¶¶ 4–5. M. Hernandez was paid exclusively in cash until approximately January 2020, at which point Monteiro used a payroll system and paid M. Hernandez by check. PFOF at 7; M. Hernandez Aff. ¶ 6. From 2016 and 2017, M. Hernandez was paid a "flat hourly rate, for all hours worked, in the amount of approximately $19.00 per hour." PFOF at 7; M. Hernandez Aff. ¶ 7. From 2018 through 2020, M. Hernandez was paid approximately $25.00 per hour and from January 2022 until September 2022, he was paid approximately $32.00 per hour. PFOF at 7; M. Hernandez Aff. ¶ 7. M. Hernandez received the same hourly rate for all hours worked even when he worked more than 40 hours per week and never received payment with accompanying pay stubs or wage statements. PFOF at 7–8; M. Hernandez Aff. ¶ 9.

### f. W. Hernandez's Work and Compensation

W. Hernandez was employed by defendants from approximately June 2014 through September 2022, "as a carpenter, while performing related duties and tasks

at the instructions and orders of [defendants]."  PFOF at 8; Affidavit of Wilson

Hernandez dated August 7, 2023 ("W. Hernandez Aff.") ¶ 2, Dkt. No. 54-3.  W.

Hernandez worked approximately five days per week and worked an average of 10.5

hours per day for a total of  52.5 hours or more per week throughout the relevant

statutory period.  PFOF at 8; W. Hernandez Aff. ¶¶ 4–5.

From November 2016 until December 2019, W. Hernandez was paid "a flat

hourly rate, for all hours worked, in the amount of approximately $27.00 per hour."

PFOF at 8; W. Hernandez Aff. ¶ 6.  From January 2020 until September 2022, W.

Hernandez was paid "a flat amount of approximately $32.00 per hour."  PFOF at 8;

W. Hernandez Aff. ¶ 6.  Additionally, W. Hernandez received the same hourly rate

of pay for all hours worked even if he worked more than 40 hours in a week.  PFOF

at 8; W. Hernandez Aff. ¶ 9.   W. Hernandez was regularly paid in cash until

approximately January 2020, when defendants began paying him by direct deposit.

PFOF at 8; W. Hernandez Aff. ¶ 7.  Although W. Hernandez was paid on a weekly

basis, he did not receive an accompanying pay stub or wage statement.  PFOF at 8;

W. Hernandez Aff. ¶ 8.

### g.  Torres's Work and Compensation

Torres was employed by defendants "as a construction worker, with other

primary duties as a masonry worker, brick builder and layer, and wall constructor"

from approximately April 2017 through October 2019.  PFOF at 9; Affidavit of Cirilo

Torres dated August 3, 2023 ("Torres Aff.") ¶ 2, Dkt. No. 54-4.  Defendants were

responsible for all aspects of Torres' employment including his work hours and

schedules.  PFOF at 9; Torres Aff. ¶ 3.  Throughout Torres' employment, he worked

approximately five days per week (Monday through Friday) from approximately

7:00 a.m. until 5:30 p.m., though he was occasionally asked to stay late on

weekdays.  PFOF at 9; Torres Aff. ¶¶ 4–5.  Torres also regularly worked on

Saturdays beginning at approximately 9:00 a.m. until around 3:30 p.m.  PFOF at 9;

Torres Aff. ¶ 6.  As a result, Torres regularly worked 59 hours per week and

received the same hourly rate of pay for all hours worked even when he worked

more than 40 hours in a week.  PFOF at 9; Torres Aff. ¶¶ 7–8.  Torres was typically

paid on a weekly basis without an accompanying pay stub or wage statement.

PFOF at 9; Torres Aff. ¶ 9.

### B. Procedural History

Plaintiffs Sarmiento, G. Perez, and A. Perez filed their complaint on

November 15, 2022.  Dkt. No. 1.  Plaintiffs alleged five causes of action against

defendants: (1) failure to pay overtime wages under the FLSA; (2) failure to pay

overtime wages under NYLL; (3) violation of frequency of pay under NYLL; (4)

violation of wage state requirements under NYLL; and (5) violation of notice and

recordkeeping requirements under NYLL.  *Id.* ¶¶ 61–81.  On November 16, 2022,

the Court issued summonses as to all three defendants (Flagge, Monteiro, and

Rodriguez).  Dkt. No. 7.  On November 29, 2022, Colleen Rodriguez, manager of

Flagge and sister of Rodriguez and Monteiro, accepted service on behalf of all

defendants at their residence in Belleville, New Jersey.  *See* Dkt. Nos. 10, 10-1 &

10-2.  On November 30, 2022, Flagge was also served via an authorized agent in the

8

New York Office of the Secretary of State pursuant to N.Y. Business Corporation Law § 306. Dkt. No. 9; *see also* Affirmation of Roman Avshalumov, Esq. dated April 17, 2023 ¶ 12, Dkt. No. 35.

By consent form filed on December 2, 2022, Fernandez consented to join the action. Dkt. No. 8. M. Hernandez and W. Hernandez consented to join the action by consent forms filed on December 14, 2022. Dkt. Nos. 11–12. Torres consented to join the action by consent form filed on December 28, 2022. Dkt. No. 13.

As defendants failed to appear, plaintiffs filed proposed certificates of default and corresponding affirmations against all three defendants on January 3, 2023. Dkt. Nos. 21–24, 29, 30. That same day, certificates of default were issued against defendants. Dkt. Nos. 27, 28, 31. Plaintiffs served these certificates on defendants on January 4, 2023. Dkt. No. 32.

On April 17, 2023, plaintiffs moved for default judgment as to all defendants, and filed an affirmation in support of the motion and a supporting memorandum of law ("Pl. Mem."). Dkt. Nos. 34–36.[2] On May 12, 2023, plaintiffs submitted a proposed order to show cause. Dkt. Nos. 39–40. The order to show cause hearing was held on June 8, 2023, but defendants failed to appear. *See* Dkt. No. 41, at 1. On June 9, 2023, the Court entered a default against Flagge, Rodriguez, and

---

[2] Plaintiffs submitted a document titled "Labor Calculations Summary" as an attachment to their motion for default judgment, which includes both topline and by-plaintiff summaries of damages allegedly owed to plaintiffs. *See* Dkt. No. 35-10. The Court will refer to this document as "Labor Calculations" in this Report and Recommendation.

Monteiro, and then referred this case to me to conduct an inquest into damages. Dkt. No. 45.[3]

On June 12, 2023, I ordered plaintiffs to submit Proposed Findings of Fact and Conclusions of Law concerning their damages and any other monetary relief owed by Flagge, Rodriguez, and Monteiro as a result of the default.  Dkt. No. 47. Plaintiffs accordingly submitted their Proposed Findings on August 11, 2023, *see* Dkt. No. 54, as well as supporting affidavits and exhibits.  *See* Fernandez Aff., Dkt. No. 54-1; M. Hernandez Aff., Dkt. No. 54-2; W. Hernandez Aff., Dkt. No. 54-3; Torres Aff., Dkt. No. 54-4.  Per the Court's Order dated August 8, 2023, the defendants' response was due on September 5, 2023, Dkt. No. 53, but none was submitted.

## II.    DISCUSSION

### A. Legal Standards for an Inquest Into Damages

Although a default is an admission of all well-pleaded allegations against the defaulting party, "a court is still 'required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law.'"  *Bolivar v. FIT Int'l Grp. Corp.*, No. 12-CV-781 (PGG) (DF), 2017 WL 11473766, at *13 (S.D.N.Y. Mar. 16, 2017) (quoting *Mickalis Pawn Shop*, 645 F.3d at 137), *adopted by* 2019 WL 4565067 (Sept. 20, 2019); *see also Zhen Ming Chen v. Y Cafe Ave B Inc.*, No. 18-CV-4193 (JPO), 2019 WL 2324567, at *1 (S.D.N.Y. May 30, 2019) ("[B]ecause a party in

---

[3] Plaintiffs mistakenly characterize the Court's action as having granted their motion for a default judgment and found in their favor on the issue of liability, PFOF at 2, but all the Court did was enter a default.

default does not admit conclusions of law, the Court must determine whether those allegations establish a sound legal basis for liability."). Therefore, the Court "must still scrutinize the plaintiff's pleadings and find the claims sufficiently pleaded." *Related Cos., L.P. v. Ruthling*, No. 17-CV-4175 (JSR) (DF), 2019 WL 10947100, at *3 (S.D.N.Y. July 23, 2019).

In determining liability, the non-defaulting party is "entitled to all reasonable inferences from the evidence offered." *Mun. Credit Union v. Queens Auto Mall, Inc.*, 126 F. Supp. 3d 290, 295 (E.D.N.Y. 2015) (quoting *Au Bon Pain*, 653 F.2d at 66). Once liability has been established, the only remaining issue is "whether the plaintiff has provided adequate support for the relief it seeks." *Bleecker v. Zeitan Sys., Inc.,* No. 12-CV-2151 (DLC), 2013 WL 5951162, at *6 (S.D.N.Y. Nov. 1, 2013) (citing *Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.,* 109 F.3d 105, 111 (2d Cir. 1997)); *see also Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) ("While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages.").

Establishing the appropriate amount of damages involves two steps: "(1) 'determining the proper rule for calculating damages on . . . a claim'; and (2) 'assessing plaintiff's evidence supporting the damages to be determined under this rule.'" *Begum v. Ariba Disc., Inc.*, No. 12-CV-6620 (DLC), 2015 WL 223780, at *4 (S.D.N.Y. Jan. 16, 2015) (alteration in original) (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). The plaintiff must

submit "sufficient evidence, in the form of detailed affidavits and other documentary materials to enable the district court to 'establish damages with reasonable certainty.'" *Nat'l Photo Grp., LLC v. Bigstar Entm't, Inc.*, No. 13-CV-5467 (VSB) (JLC), 2014 WL 1396543, at *2 (S.D.N.Y. Apr. 11, 2014) (internal citation omitted) (quoting *Transatl. Marine Claims Agency*, 109 F.3d at 111), *adopted by* 2014 WL 5051275 (Oct. 8, 2014); *see also* Fed. R. Civ. P. 55(b)(2). Although Rule 55 of the Federal Rules of Civil Procedure permits the Court to conduct hearings to determine damages, it is not mandatory. *See, e.g., Cement & Concrete Corkers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012).[4]

An employee seeking to recover unpaid wages "'has the burden of proving [that] he performed work for which he was not properly compensated.'" *Jiao v. Chen*, No. 03-CV-165 (DF), 2007 WL 4944767, at *2 (S.D.N.Y. Mar. 30, 2007) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 689 (1946)). "[T]he employee should not speculate, but may rely on his present memory and recollection to carry the burden." *Maldonado v. La Nueva Rampa, Inc.*, No. 10-CV-8195 (LLS) (JLC), 2012 WL 1669341, at *3 (S.D.N.Y. May 14, 2012) (quotation marks and

---

[4] The Second Circuit has long approved the process of conducting an inquest by affidavit, without an in-person court hearing, "as long as [the court has] ensured that there was a basis for the damages specified in the default judgment." *Transatl. Marine Claims Agency, Inc.*, 109 F.3d at 111 (quoting *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)). Here, "a hearing is not necessary, as documents submitted in this action provide a 'sufficient basis from which to evaluate the fairness' of the damages requested." *Am. Jewish Comm. v. Berman*, No. 15-CV-5983 (LAK) (JLC), 2016 WL 3365313, at *4 (S.D.N.Y. June 15, 2016) (quoting *Fustok*, 873 F.2d at 40), *adopted by* 2016 WL 4532201 (Aug. 29, 2016).

citations omitted), *adopted by* Order dated Aug. 9, 2012 (Dkt. No. 20). An affidavit that sets forth the number of hours worked is sufficient. *See, e.g., Rodriguez v. Queens Convenience Deli Corp.*, No. 09-CV-1089 (KAM) (SMG), 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011). Absent "rebuttal by defendants . . . [the employee's] recollection and estimates of hours worked are presumed to be correct." *Kernes v. Global Structures, LLC*, No. 15-CV-659 (CM) (DF), 2016 WL 880199, at *6 (S.D.N.Y. Feb. 9, 2016) (alterations in original) (internal quotation marks and citations omitted), *adopted by* Order dated Mar. 1, 2016 (Dkt. No. 27).

### B. Liability

#### 1. Legal Standard

Both federal and state law require employers to pay employees time and a half for time worked in excess of 40 hours a week. *See* 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 146-1.4. To establish a claim for unpaid overtime, a plaintiff must prove: (1) he worked more than 40 hours in a week, (2) with the employer's actual or constructive knowledge, and (3) he was not properly compensated. *See, e.g., Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011); *Tambriz v. Taste & Sabor LLC*, 577 F. Supp. 3d 314, 327 (S.D.N.Y. 2021) (citing *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013)).

#### 2. Application

Plaintiffs each claim that they worked more than 40 hours per week throughout their employment but received only a "flat hourly rate" for all hours regardless of the number of hours worked. Compl. ¶¶ 23–43; PFOF at 3–9

(citations omitted).  Specifically, Sarmiento worked approximately 72 hours or more each week and received $25.00 per hour from November 2016 until December 2018 and $33.00 from January 2019 until February 2020.  Compl. ¶¶ 8, 26–28; PFOF at 3–4.  G. Perez worked approximately 66 hours or more each week and received $25.00 per hour from November 2016 until December 2018.  Compl. ¶¶ 9, 33–35; PFOF at 4.  A. Perez worked approximately 70 hours or more each week and received $25.00 per hour from April 2014 until December 2018.  Compl. ¶¶ 10, 40–42; PFOF at 5.  Fernandez worked approximately 48 to 55 hours or more each week and received $32.00 per hour from 2015 through 2017, $35.00 per hour from 2018 through 2020, and $40.00 per hour from 2021 through 2022.  PFOF at 6; Fernandez Aff. ¶¶ 5–7; Labor Calculations at 5.[5]  M. Hernandez worked approximately 42.5 hours or more each week and received $19.00 per hour from 2016 through 2017, $25.00 per hour from 2018 until 2020, after which he was paid approximately $32.00 per hour.  PFOF at 7; M. Hernandez Aff. ¶¶ 7; Labor Calculations at 6.  W. Hernandez worked approximately 52.5 hours or more each week and received $27.00 per hour from November 2016 until December 2019, and $32.00 per hour from January 2020 until September 2022.  PFOF at 8; W. Hernandez Aff. ¶¶ 6, 9. Lastly, Torres worked approximately 59 hours per week and received $27.00 per

---

[5] Although the Proposed Findings of Fact state that Fernandez received $35 from 2018 through 2020, the Labor Calculations spreadsheet lists the following date ranges: November 1, 2016, through December 31, 2017; January 1, 2018, through December 31, 2019; and January 1, 2021, through September 30, 2022.  Excluding the two weeks that are outside the statute of limitations (November 1 through 14, 2016), the Court will use the date ranges provided in the Labor Calculations spreadsheet.

hour from April 2017 through October 2019.  PFOF at 9; Torres Aff. ¶¶ 2, 7–9;
Labor Calculations at 8 (listing hourly wage rate).

Plaintiffs have thus "adequately stated a claim for unpaid overtime wages
under the FLSA and . . . NYLL." *Victor v. Sam's Deli Grocery Corp.*, No. 19-CV-
2965 (SLC), 2022 WL 3656312, at *10 (S.D.N.Y. Aug. 25, 2022); *see Suriel v. Cruz*,
No. 20-CV-8442 (VSB) (SLC), 2022 WL 1750232, at *13 (S.D.N.Y. Jan. 10, 2022)
(claim for unpaid overtime wages cognizable), *adopted by* 2022 WL 1751163 (May
31, 2022); *accord Agureyev v. H.K. Second Ave. Rest., Inc.*, No. 17-CV-7336 (SLC),
2021 WL 847977, at *7 (S.D.N.Y. Mar. 5, 2021); *Mondragon v. Keff*, No. 15-CV-2529
(JPO) (BCM), 2019 WL 2551536, at *9 (S.D.N.Y. May 31, 2019), *adopted by* 2019
WL 2544666 (June 20, 2019).

### C. Damages

All plaintiffs (Sarmiento, G. Perez, A. Perez, Fernandez, M. Hernandez, W.
Hernandez, and Torres) seek damages for unpaid overtime wages, liquidated
damages, and statutory damages for defendants' allegedly willful record-keeping
violations.  *See* PFOF at 11, 16–17.  Sarmiento, G. Perez, and A. Perez additionally
seek liquidated damages for late payments pursuant to NYLL §§ 191 and 198(1-a).
*Id.* at 12–16.  Plaintiffs do not seek pre-judgment interest or attorney's fees.

Where there is liability under both the FLSA and NYLL, a plaintiff recovers
"under the statute which provides the greatest amount of damages." *Almanzar v.
1342 St. Nicholas Ave. Rest. Corp.*, No. 14-CV-7850 (VEC) (DF), 2016 WL 8650464,
at *7 (S.D.N.Y. Nov. 7, 2016), *adopted by* 2017 WL 1194682 (Mar. 30, 2017); *see*

*also, e.g., Salazar v. 203 Lena Inc.*, No. 16-CV-7743 (VB) (JLC), 2020 WL 5627118, at *4 (S.D.N.Y. Sept. 18, 2020), *adopted by* 2020 WL 6257158 (Oct. 23, 2020).  As NYLL provides for greater relief, it applies to the calculation of damages in this case.

Additionally, under the FLSA and NYLL, the plaintiffs' federal and state law claims are subject to statute of limitations periods of two (or three if willful) and six years from the date of the filing of the Complaint, respectively.  As plaintiffs filed the complaint on November 15, 2022, and as NYLL applies to the damages calculations, the relevant statutory period for plaintiffs' claims spans from November 15, 2016, through November 15, 2022 rather than the November 1, 2016 date used by plaintiffs in calculating their damages.

### 1.  Unpaid Overtime (First and Second Causes of Action)

#### a.  Legal Standard

The FLSA requires employers to pay employees at least the federal minimum wage for every hour worked, 29 U.S.C. § 206, or the state minimum wage if it exceeds the federal minimum wage.  29 U.S.C. § 218(a).  Throughout the relevant statutory period, the state minimum wage was between $8.00 and $15.00 per hour, which was higher than the federal minimum wage.  NYLL § 652(a)(i).

Both federal and state law also require employers to pay employees overtime wages at one and one-half times the wage for time worked in excess of 40 hours per week.  29 U.S.C. § 207(a)(1); 12 NYCRR §§ 146-1.4, 142-2.2; *de Los Santos v. Marte Constr., Inc.*, No. 18-CV-10748 (PAE) (KHP), 2020 WL 8549054, at *5 (S.D.N.Y.,

2020) ("The FLSA and NYLL require employers to 'compensate employees who work over forty hours per week with overtime pay at the rate of one and one-half times the regular rate.'" (first quoting *Pineda v. Inc.*, 831 F. Supp. 2d 666, 673 (S.D.N.Y. 2011); then citing 29 U.S.C. § 207(a)(1); 12 NYCRR § 142-2.2.), *adopted by* 2020 WL 8549055 (Dec. 17, 2020).  Overtime wages are "calculated by multiplying [an employee's] regular hourly rate (or the minimum wage rate, if his regular hourly rate falls below the minimum wage) by one and one-half.  That rate is then multiplied by the number of hours in excess of forty hours the employee worked each week." *Rosendo v. Everbrighten Inc.*, No. 13-CV-7256 (JGK) (FM), 2015 WL 1600057, at *4 (S.D.N.Y. Apr. 7, 2015), *adopted by* 2015 WL 4557147 (July 28, 2015).  Accordingly, all plaintiffs' unpaid overtime wages should be calculated as described.

### b.  Application and Calculation

Sarmiento seeks damages for unpaid overtime wages in the amount of $77,124.57.  PFOF at 16.  G. Perez seeks damages for unpaid overtime wages in the amount of $36,678.57.  *Id.*  A. Perez seeks damages for unpaid overtime wages in the amount of $42,321.43.  *Id.*  Fernandez seeks damages for unpaid overtime wages in the amount of $87,664.64.  *Id.* at 17.  M. Hernandez seeks damages for unpaid overtime wages in the amount of $6,330.36.  *Id.*  W. Hernandez seeks damages for unpaid overtime wages in the amount of $56,500.89.  *Id.*  Torres seeks damages for unpaid overtime wages in the amount of $38,191.50.  *Id.*  The total amount of damages sought is $344,811.96.  *See* Labor Calculations at 1.  Plaintiffs,

17

however, should be awarded a reduced amount of $291,221.61 in unpaid overtime compensation based on the Court's own calculations.[6]  The plaintiffs' award for unpaid overtime should be calculated as follows based on the relevant statutory period of November 15, 2016, through November 15, 2022, and the wage rates attested to by plaintiffs.

### i.    Sarmiento

| Time Period | Weeks Worked | Wage Rate | Overtime Owed (50% of wage rate) | Hours Worked | Overtime Hours Worked | Total |
|---|---|---|---|---|---|---|
| 11/15/2016–12/31/2018 | 110.86 | $ 25.00 | $ 12.50 | 72.00 | 32.00 | $ 44,344.00 |
| 1/1/2019–2/29/2020 | 60.57 | $ 33.00 | $ 16.50 | 72.00 | 32.00 | $ 31,980.96 |
| TOTAL | | | | | | $ 76,324.96 |

### ii.    G. Perez

| Time Period | Weeks Worked | Wage Rate | Overtime Owed (50% of wage rate) | Hours Worked | Overtime Hours Worked | Total |
|---|---|---|---|---|---|---|
| 11/15/2016–12/31/2018 | 110.86 | $ 25.00 | $ 12.50 | 66.00 | 26.00 | $ 36,029.50 |
| TOTAL | | | | | | $ 36,029.50 |

### iii.    A. Perez

| Time Period | Weeks Worked | Wage Rate | Overtime Owed (50% of wage rate) | Hours Worked | Overtime Hours Worked | Total |
|---|---|---|---|---|---|---|
| 11/15/2016–12/31/2018 | 110.86 | $25.00 | $ 12.50 | 70.00 | 30.00 | $ 41,572.50 |
| TOTAL | | | | | | $ 41,572.50 |

---

[6] The reduction is due to the fact that plaintiffs used November 1, 2016 as the start date for their calculations, which is two weeks outside the applicable statute of limitations period.

### iv.    Fernandez

| Time Period | Weeks Worked | Wage Rate | Overtime Owed (50% of wage rate) | Hours Worked[7] | Overtime Hours Worked | Total |
|---|---|---|---|---|---|---|
| 11/15/2016–12/31/2017 | 58.71 | $ 32.00 | $ 16.00 | 48.00 | 8.00 | $ 7,514.88 |
| 1/1/2018–12/31/2019 | 104.14 | $ 35.00 | $ 17.50 | 48.00 | 8.00 | $ 14,579.60 |
| 1/1/2021–9/30/2022 | 91.00 | $ 40.00 | $ 20.00 | 48.00 | 8.00 | $ 14,560.00 |
| TOTAL | | | | | | $ 36,654.48 |

### v.    M. Hernandez[8]

| Time Period | Weeks Worked | Wage Rate | Overtime Owed (50% of wage rate) | Hours Worked | Overtime Hours Worked | Total |
|---|---|---|---|---|---|---|
| 11/15/2016–12/31/2017 | 58.71 | $19.00 | $ 9.50 | 42.50 | 2.50 | $ 1,394.36 |
| 1/1/2018–12/31/2020 | 156.43 | $25.00 | $ 12.50 | 42.50 | 2.50 | $ 4,888.44 |
| 1/1/2021–9/30/2022 | 91.00 | $32.00 | $ 16.00 | 42.50 | 2.50 | $ 3,640.00 |
| TOTAL | | | | | | $ 9,922.80 |

### vi.    W. Hernandez

| Time Period | Weeks Worked | Wage Rate | Overtime Owed (50% of wage rate) | Hours Worked | Overtime Hours Worked | Total |
|---|---|---|---|---|---|---|
| 11/15/2016–12/31/2019 | 163.00 | $ 27.00 | $ 13.50 | 52.50 | 12.50 | $ 27,506.25 |
| 1/1/2020–9/30/2022 | 143.29 | $ 32.00 | $ 16.00 | 52.50 | 12.50 | $ 28,658.00 |
| TOTAL | | | | | | $ 56,164.25 |

[7] Fernandez stated that he worked an average of approximately 48 to 55 hours per week.  PFOF at 6.  As Fernandez does not specify the number of hours worked during the relevant statutory period, the Court will consider Fernandez to have worked 48 hours per week.

[8] Plaintiffs' calculations do not include the period between January 1, 2021, and September 20, 2022, during which M. Hernandez worked.  *See* Labor Calculations at 6.  The Court's calculations, however, consider this period for M. Hernandez's overtime compensation.

### vii.    Torres[9]

| Time Period | Weeks Worked | Wage Rate | Overtime Owed (50% of wage rate) | Hours Worked | Overtime Hours Worked | Total |
|---|---|---|---|---|---|---|
| 4/1/2017–10/31/2019 | 134.71 | $ 27.00 | $ 13.50 | 59.00 | 19.00 | $ 34,553.12 |
| TOTAL | | | | | | $ 34,553.12 |

Accordingly, plaintiffs should be awarded **$291,221.61** in unpaid overtime compensation under the FLSA and NYLL.

### 3. Liquidated Damages on Overtime Claims

#### a. Legal Standard

NYLL entitles an employee to liquidated damages "equal to [100 percent] of the total of such underpayments found to be due . . . unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law." §§ 198(l-a), 663(1); *see* 29 U.S.C. §§ 216(b), 260. "[D]efaulting defendants . . . obviously [have] made no showing of good faith." *Schalaudek v. Chateau 20th St. LLC*, No. 16-CV-11 (WHP) (JLC), 2017 WL 729544, at *10 (S.D.N.Y. Feb. 24, 2017) (quoting *Xochimitl*, 2016 WL 4704917, at *18), *adopted as modified by* 2017 WL 1968677 (May 11, 2017).

#### b. Application and Calculation

Because defendants defaulted, plaintiffs are each entitled to liquidated damages for all of their unpaid overtime. *See, e.g.*, *Gomez v. NYHS Design Inc.*, No.

---

[9] The Proposed Findings of Fact and supporting documentation fail to state the regular wage rate Torres received throughout his employment. The following calculations thus use the wage rate provided in the Labor Calculations summary. *See* Labor Calculations at 8.

20-CV-4174 (ALC) (GWG), 2022 WL 4284143, at *4 (S.D.N.Y. Sept. 16, 2022),

*adopted by* 2022 WL 6175174 (Oct. 6, 2022).  Defendants owe $76,324.96 to

Sarmiento; $36,029.50 to G. Perez; $41,572.50 to A. Perez; $36,654.48 to Fernandez,

$9,922.80  to M. Hernandez, $56,164.25 to W. Hernandez, and $34,553.12 to Torres

in liquidated damages under NYLL.

### 4. Liquidated Damages for Late Payments (Third Cause of Action)

#### a. Legal Standard

Section 191(1)(a) of NYLL provides that "[a] manual worker"—which is

defined as a "mechanic, workingman[,] or laborer," NYLL § 190(4)—"shall be paid

weekly and not later than seven calendar days after the end of the week in which

the wages are earned[.]"  NYLL § 191(1)(a)(i).  Section 198 of NYLL permits

employees bringing a wage claim to recover, among other forms of relief, liquidated

damages "equal to one hundred percent of the total amount of the wages found to be

due" "unless the employer [can] prove[] a good faith basis for believing that its

underpayment of wages was in compliance with the law" or equal to "up to three

hundred percent of the total amount of the wages found to be due for a willful

violation of [NYLL § 194]."  NYLL § 198(1-a).

New York courts are currently split on whether § 198(1-a) expressly provides

a private right of action for a manual worker who is paid biweekly in violation of

§ 191(1)(a) to recover liquidated damages.  In *Vega v. CM and Associates

Construction Management, LLC*, the First Department held a private right of action

exists, observing that "[t]he purpose of section 198(1–a) is [to] 'enhanc[e]

enforcement of the Labor Law's substantive wage enforcement provisions" and "the plain language of the statute indicates that individuals may bring suit for any 'wage claim' against an employer," such as underpayment.  175 A.D.3d 1144, 1145 (1st Dep't 2019) (citations omitted).  The First Department further held, applying the ordinary meaning of the term, "underpayment encompasses the instances where an employer violates the frequency requirements of section 191(1)(a)," and so "[t]he moment that an employer fails to pay wages in compliance with section 191(1)(a), the employer pays less than what is required."  *Id.*

More recently, in *Grant v. Global Aircraft Dispatch*, the Second Department declined to follow the reasoning in *Vega*, holding instead that "[t]he plain language of Labor Law § 198(1–a) supports the conclusion that this statute is addressed to nonpayment and underpayment of wages, as distinct from the frequency of payment."  2024 WL 172900, at *3 (2d Dep't Jan. 17, 2024); *see also id.* at *3 ("[W]e do not agree [with *Vega*] that payment of full wages on the regular biweekly payday constitutes nonpayment or underpayment.").  The *Grant* court further reasoned that, citing both the New York State Assembly memorandum in support of the bill and the 2010 amendments as part of the Wage Theft Prevention Act, the bill's legislative purpose was to "collect wage underpayments" and to support "low-wage workers struggling to support their families on the minimum wage."  *Id.* at *5 (citations omitted); *see also id.* (finding no reference in the legislative history to "frequency or timing of wage payments" and "nothing to suggest" statute was

22

"meant to address circumstances in which an employer pays full wages pursuant to agreed-upon, biweekly pay schedule").

### b. Application

Sarmiento, G. Perez, and A. Perez argue that they are entitled to liquidated damages for violation of NYLL's statutory requirement that a manual worker is required to be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned.  NYLL § 191(1)(a)(i); *see* PFOF at 13–14.[10] Despite the *Vega*/*Grant* split, the Court need not reach the issue of whether an employee who receives full wages on a bi-weekly, rather than weekly, schedule can recover liquidated damages, as plaintiffs in this case received only a flat hourly rate for all hours regardless of the number of hours worked.  Since here, plaintiffs seek their unpaid overtime wages (and were not "paid in full," as was the case in *Grant*, 2024 WL 172900, at *1, *3), and because defendants, by failing to appear, have not established good cause, the Court recommends an award of liquidated damages for late payments, consistent with the First Department's decision in *Vega*.  This recommendation accords with a recent decision in this District, in which a claim for liquidated damages for late payments was allowed to proceed as "the loss of money owed to plaintiff [was] not a harm that *might* occur, but one that *has* occurred."

---

[10] The other plaintiffs do not seek damages for late payments.  PFOF at 13.

*Zachary v. BG Retail, LLC*, No. 22-CV-10521 (VB), 2024 WL 554174, at *3 (S.D.N.Y. Feb. 12, 2024).[11]

Plaintiffs Sarmiento, G. Perez, and A. Perez should thus be awarded liquidated damages equal to 100 percent of their unpaid wages. The Court has calculated plaintiffs' liquidated damages for late payments based on the compensation categories and calculations of liquidated damages for late payments in *Bemejo v. Shaker Contractors, Corp.*, 2022 WL 17251667, at *5.[12] In *Bemejo*, the court divided the compensation to which each plaintiff was entitled over a two-week period into four categories:

> (1) pay at the regular hourly rate for each hour of time worked during the first week, (2) an additional sum of one-half the regular rate for each hour of overtime worked during the first week, (3) pay at the regular hourly rate for each hour of time worked during the second week, and (4) an additional sum of one-half the regular rate for each hour of overtime worked during the second week.

*Id.* Like in *Bemejo*, here too only the third category was paid in compliance with the law, and so the wages due to Sarmiento, G. Perez, and A. Perez are equal to the amounts in categories one, two, and four. However, "since [Sarmiento, G. Perez, and A. Perez's] overtime liquidated damages equal the wages falling into categories two and four, their remaining liquidated damages claim—namely, liquidated

---

[11] The *Zachary* court carefully analyzed the decisions in *Vega* and *Grant* and, in agreeing with *Vega*, concluded that a late wage claim under Section 191 is privately actionable "even if that right is not expressly codified in the NYLL." *Id.* at *8. To the extent it is necessary to reach that question, I agree with the court's analysis in *Zachary* and recommend it be followed here.

[12] Plaintiffs' counsel in *Bemejo* is the same as in this case.

damages for late payments—cannot exceed the wages that fall into category one."
*Id.* "Plaintiffs' liquidated damages for late payments must equal the actual amount paid late"—*i.e.*, "for each week of late pay, the number of hours worked per week multiplied by the regular rate of pay, where the regular rate equals each [p]laintiff's weekly compensation divided by his weekly number of hours worked." *Id.*; *see also Ramirez v. Urion Constr. LLC*, No. 22-CV-3342 (LGS) (RWL), 2023 WL 3570639, at *7 (S.D.N.Y. May 19, 2023) (using same calculations).

Accordingly, accounting for these damages, Sarmiento should receive **$171,743.04**, G. Perez should receive **$91,459.50**, and A. Perez should receive **$97,002.50** for a total of **$360,205.04** in liquidated damages for late payments.[13]

### i.  Sarmiento

| Time Period | Weeks Worked | No. of Late Payments (every other week) | Wage Rate | Hours Worked | Total Late Wage |
|---|---|---|---|---|---|
| 11/15/2016–12/31/2018 | 110.86 | 55.43 | $ 25.00 | 72.00 | $ 99,774.00 |
| 11/15/2016–12/31/2018 | 60.57 | 30.29 | $ 33.00 | 72.00 | $ 71,969.04 |
| TOTAL | | | | | $ 171,743.04 |

---

[13] While such an award is "sizeable and seemingly disproportionate to the harm . . . [i]f there is a problem to be fixed, it is for the legislature to do so, not the Court, particularly where [d]efendants have elected not to appear and instead to default." *Ramirez*, 2023 WL 3570639, at *7 (awarding liquidated damages for late payments). Indeed, it appears the State is poised to do so.  *See* FY 2025 N.Y. State Exec. Budget, Education, Labor & Family Assistance ("ELFA") Article VII Legislation, at 68–69 (Jan. 9, 2024), https://www.budget.ny.gov/pubs/archive/fy25/ex/artvii/elfa-bill.pdf (proposed amendment limiting liquidated damages in frequency of pay violations).  However, based on the state of the law today, and until the ELFA amendment is enacted, the Court's recommendation remains the same.

### ii.  G. Perez

| Time Period | Weeks Worked | No. of Late Payments (every other week) | Wage Rate; Half Rate | Hours Worked | Total Late Wage |
|---|---|---|---|---|---|
| 11/15/2016–12/31/2018 | 110.86 | 55.43 | $ 25.00 | 66.00 | $ 91,459.50 |

### iii.  A. Perez

| Time Period | Weeks Worked | No. of Late Payments (every other week) | Wage Rate | Hours Worked | Total Late Wage |
|---|---|---|---|---|---|
| 11/15/2016–12/31/2018 | 110.86 | 55.43 | $25.00 | 70.00 | $ 97,002.50 |

### 5.  Wage Notice and Wage Statements (Fourth and Fifth Causes of Action)

Plaintiffs also seek damages for defendants' violation of requirements under NYLL that employers provide employees with wage notice at the outset of their employment and regular wage statements with each payment made.  Specifically, employers are required to provide employees, at the time of hiring, with a wage notice containing basic information including the rate of pay and regular pay day. NYLL § 195(1)(a).  Where an employer fails to provide the requisite wage notice within ten business days of the first day of employment, the penalty is $50 for each workday that a violation occurs or continues to occur; however, damages cannot exceed $5,000.  NYLL § 198(1-b).  NYLL also requires employers to provide employees with a wage statement with each payment of wages.  NYLL § 195(3).  An employee can recover $250 for each workday that a wage statement violation occurs or continues to occur, not to exceed a total of $5,000.  NYLL § 198(1-d).

26

"In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, No. 19-CV-7654 (VEC), 2023 WL 2388728, at *8 (S.D.N.Y. Mar. 7, 2023) (referring to *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021)). "While allegations that go 'beyond asserting a bare statutory violation and sufficiently allege a concrete harm' resulting from 'the underpayment of wages' pass muster, *Mateer v. Peloton Interactive, Inc.*, No. 22-CV-740 (LGS), 2022 WL 2751871, at *2 (S.D.N.Y. July 14, 2022), plaintiffs' allegations here do not." *De La Cruz v. Pastrami Prince*, No. 20-CV-4643 (JPC) (JLC), 2023 WL 6567925, at *5 (S.D.N.Y. Oct. 10, 2023), *adopted by* 2023 WL 7018871 (Oct. 25, 2023). Indeed, plaintiffs allege only that defendants "failed to provide [plaintiffs] with accompanying wages statements or pay stubs." *See* PFOF at 11; Compl. ¶¶ 77, 80. Plaintiffs have failed to plead "facts that affirmatively and plausibly suggest that [they have] standing" with respect to their wage notice and statement claims. *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 75 (2d Cir. 2022). As a result, the Court has no jurisdiction over those claims and may not award plaintiffs statutory damages for defendants' violations. *See, e.g., De La Cruz*, 2023 WL 6567925, at *5–6 (concluding same).

## III.    CONCLUSION

For the foregoing reasons, I recommend that damages be awarded in the following amounts:

| Damages Category | Total Amount Owed to Plaintiffs (by Category) | Amount Owed (by Individual Plaintiff) |
|---|---|---|
| Unpaid Overtime | $291,221.61 | Sarmiento: $76,324.96<br>G. Perez: $36,029.50<br>A. Perez: $41,572.50<br>Fernandez: $36,654.48<br>M. Hernandez: $9,922.80<br>W. Hernandez: $56,164.25<br>Torres: $34,553.12 |
| Liquidated Damages on Unpaid Overtime | $291,221.61 | Sarmiento: $76,324.96<br>G. Perez: $36,029.50<br>A. Perez: $41,572.50<br>Fernandez: $36,654.48<br>M. Hernandez: $9,922.80<br>W. Hernandez: $56,164.25<br>Torres: $34,553.12 |
| Liquidated Damages for Late Payments | $360,205.04 | Sarmiento: $171,743.04<br>G. Perez: $91,459.50<br>A. Perez: $97,002.50 |
| Statutory Damages | None. | None. |
| **GRAND TOTAL** | **$942,648.26** | Sarmiento: $324,392.96<br>G. Perez: $163,518.50<br>A. Perez: $180,147.50<br>Fernandez: $73,308.96<br>M. Hernandez: $19,845.60<br>W. Hernandez: $112,328.50<br>Torres: $69,106.24 |

## PROCEDURE FOR FILING OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to such objections, shall be filed with the Clerk of Court, with courtesy

copies delivered to the chambers of the Honorable Vernon S. Broderick, United States Courthouse, 40 Foley Square, New York, NY 10007. Any requests for an extension of time for filing objections must be directed to Judge Broderick.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

Dated:  February 27, 2024
         New York, New York

_____
JAMES L. COTT
United States Magistrate Judge

29